Curtis v. Leavitt.

CURTIS, GRAHAM and BLATCHFORD, trustees, &c. *vs.* LEA-VITT, receiver &c. and others.

LEAVITT, receiver &c. *vs.* CURTIS, GRAHAM and BLATCH-FORD, trustees, &c.

An appeal to the court of appeals, with security given, in the sum of $250, will not stay the taxation of costs.

Where a suit in chancery was commenced previous to the code, and the final decree or judgment was rendered in December, 1853, after the code took effect; *Held* that the costs which accrued prior to July 1, 1851, were to be taxed under the chancery fee bill, and all subsequent costs, under the code.

THIS was an application to the court for directions as to the mode of taxing the costs of the trustees, in these causes.

*Wm. Curtis Noyes*, for the trustees.

*John Cleaveland*, for D. Leavitt, receiver.

*B. W. Bonney*, for John J. Palmer, special receiver.

*By the Court*, MITCHELL, J. The decree or judgment of this court was rendered on the 31st of December last, sustaining the trusts in the cause, and adverse to the claims of the receiver. It directed in substance that " *the taxable costs*" of the trustees and of the receivers, and of other parties, together with the amounts secured by the trust deeds be paid out of the funds in the hands of Mr. Palmer as special receiver in these actions, and

Curtis *v.* Leavitt.

if these were not sufficient, next out of the funds in the hands of Mr. Leavitt, so far as those funds were covered by the trust deed and were necessary for that purpose. The bills were filed in 1842, and answers put in, and testimony taken and closed in December, 1850. The pleadings and proofs were all in writing and constituted several large volumes of printed matter. The cause was called for hearing in April, 1851, before Mr. Justice King, at special term, but was directed by him pursuant to the judiciary act, to be first heard at general term ; and it was so heard, on the pleadings and proofs, in 1852. The trustees applied to one of the justices of this court to tax their costs, when the counsel for the receiver objected that the taxation should be under the code ; and the justice referred the matter to the general term for directions. The receiver now also objects to the taxation, on the ground that he has appealed from the decree and given security in $250 ; which he insists is a stay to all proceedings, and especially to prevent any payment of moneys, under the decree. The trustees contend that the appeal is no stay, unless there be security for the payment of whatever sum the appellant may be decreed to pay. The only questions now necessary to be decided are, whether an appeal with security in $250 stays taxation of costs, and by what system the costs are to be taxed.

Assuming the view of § 459 of the code that the judgment in these actions is to be entered according to the code, although the action was commenced before the code, then according to section 311, the clerk is to insert in the entry of the judgment, the amount of the costs payable to any party; and the judgment would not be complete without such entry. At common law also the amount of the costs to the prevailing party formed a proper part of a complete judgment. In equity also the same practice prevailed before 1830, and then the only change was to annex the whole bill of costs to the decree, instead of stating the total in the decree. The code, § 311, adopts the common law practice. All then that the trustees now propose to do is to perfect their judgment, not to execute it. Section 335 prevents an appeal on a judgment directing the payment of money from staying the *execution* of the judgment, unless security be given in the amount

Curtis v. Leavitt.

therein required; and section 332 allows such an undertaking as was given in this case to "stay proceedings in the court below upon the *judgment* appealed from." Proceedings upon the judgment are those which are in some way to carry out or enforce the judgment, as an execution on a judgment for the payment of money, or a sale on a decree of foreclosure and sale, or process for contempt, or other coercive measures on a judgment to deliver documents or property, or to execute a conveyance. These modes of "proceeding upon a judgment," are specified in §§ 335, 6, 7, 8, and illustrate the meaning of the general phrase afterwards used in §§ 339 and 342, and show that it is to be construed by reference to these illustrations, and in analogy with them. The taxation or adjustment of costs not being an execution of, or proceeding upon, the judgment, but a means of completing it, is not stayed by the appeal.

The other question is, as to the rule of taxing costs. To understand some of the decisions on that subject more clearly, it may be proper to notice the legislation on which they were founded. The revised statutes prescribed the law as to costs, both at law and in chancery; and continued to control as to the amount of costs in suits at law, until 1840, when a new system of costs in such suits was adopted. The general principle of the new system was to pay for a particular service a certain sum whether it took much or little writing to perform it. The new act was not merely inconsistent with the old in cases to which it applied, but it expressly repealed sections 17, 18, 19, 22, 27, 31 and 32 of the revised statutes as to costs. Those sections related to costs of attorneys and counsel in the supreme court and common pleas, and of the clerks and criers in those courts. (*Laws* 1840, *ch.* 386, § 40, *and* 2 *R. S.* 632, § 17, *&c.*) It however provided by § 38, that the act should not affect any suit or proceeding commenced before that act took effect. This saving section was repealed in 1844. (*Laws* 1844, *ch.* 104, § 8.) So that after that time, the law of 1840 was to apply even to suits commenced before 1840. At common law, and without some statute, a successful party had no right to costs; if therefore in any case a successful party will claim costs, he must point out

some statute in force, and not repealed, which gives them to him; he cannot claim them under a repealed statute; for that has ceased to exist, and he is left therefore to claim them under some statute in force, when the judgment is rendered. Accordingly under the joint effect of the acts of 1840 and 1844, costs could not be taxed under the system of the revised statutes if the judgment were obtained before the acts of 1844 took effect, except perhaps as between attorney and client. (*Brooklyn Bank* v. *Willoughby,* 1 *Sandf. Sup. Ct. Rep.* 669, 670.) When the revised statutes were adopted, they repealed the previous statutes as to costs, on the same subject, (*sub.* 90 *of* § 1, 3 *R. S.* 132,) but declared that such repeal should not affect suits commenced in any civil cause previous to the repeal taking effect. (1 *id. p.* 155, § 5.) That left two systems in force, and it is believed that each was applied as to old suits so far as the services had been rendered under them.

Before the revised statutes costs on appeal, in certain cases, from a justice's court to the county court, were in the discretion of the court; but the revised statutes gave the appellant full costs if he reduced the judgment against him $10; and the supreme court held, although the appeal was made before the revised statutes took effect, that the former "*statute was repealed,* and that there was then no law regulating the costs in cases of *that* kind but what was to be found in the revised statutes, which therefore must govern." (*People ex rel. Berry* v. *Herkimer Com. Pleas,* 4 *Wend.* 210.) This put the decision on the ground that no other law, as to costs, but the new one, was then in force. A like decision on the same principle was made in *The Supervisors of Onondaga* v. *Briggs,* (3 *Denio,* 173,) under the acts of 1840 and 1844. And the court held that even in suits commenced before the act of 1840, if judgment were obtained after the act of 1844 took effect, all the costs were to be taxed under the act of 1840; but on the ground that the previous acts as to costs had been repealed and so became totally extinct, the court said, "when the 38th section of the act of 1840 came to be repealed by the act of 1844, all the provisions of the revised statutes, regulating the compensation

of counsellers and attorneys in this court, *became extinct*, and that beside the two acts of 1840 and 1844, there was no other act in force when the suit was terminated, or when the costs were taxed, bearing upon the subject. (*Id. p.* 175, 176.)

This case is different. These were equity suits, commenced before the code took effect, and the revised statutes as to the costs in such suits, remain to this day unrepealed, notwithstanding all the amendments of the laws. They were not touched by the acts of 1840 and 1844, and there never has been any act expressly repealing them. They therefore may stand along with the code, and have generally been supposed still to stand and to have equal force where the services were rendered under them. Section 459 of the code, as amended in 1851, does not by implication repeal them. It makes the provision of the code " apply to *future* proceedings in actions theretofore commenced, as follows : when an issue of law or fact was to be tried then the trial and all *subsequent* proceedings, and after judgment to the proceedings to enforce, vacate, modify or reverse it, *including* the costs of an appeal." By its very terms it was to apply only to the *future* proceedings in the cause. The bills of complaint drawn and served in these causes, and the answers and replies also drawn and served, and the testimony then taken, and the order closing the proofs, all constituted parts of the past (and not of the future) proceedings in the cause, when the act of 1851 was passed. Those services, too, were all rendered under a reasonable expectation that they were to be paid for under the laws then in force. Those laws do remain still in force, and have no application unless it be to cases where actions were commenced (as this was) before the code took effect, and the costs had not yet been taxed, nor judgment rendered. They cannot be said to have been allowed to remain for cases where judgment had been rendered, but costs not yet taxed : for after judgment the rights of the parties would be fixed, as on a contract, and the subsequent repeal of the law could not affect such rights. It is also entirely contrary to the prevailing policy of the legislature to allow a law to retrospect, even when it does not impair a contract. Accordingly, the code

Curtis *v.* Leavitt.

by express terms was not to apply to then existing suits, except in the first part of it, which relates only to the powers of the courts. (§ 8.) The statute of limitations adopted in it was made to apply only to future actions and causes of action, although such statutes affect the remedy only. The title of the code relating to costs was included in the part which was not to apply to existing actions ; and while other sections were by the supplementary act of 1849, made applicable to old suits, this title as to costs was excluded from that act, except § 315 as to costs on motion. This shows a deliberate purpose on the part of the legislature to save the right to costs for services already rendered, as they would a like right under an express contract. Such a clear purpose, so consonant to justice, ought not to be defeated on a supposed implication. Section 203 was quoted as repealing all the old fee bills ; but it must be taken with the qualification contained in § 8, which expressly permits its application to existing suits, and then it will only read that the old fee bills are repealed as to future suits, and leave them in force as to old suits. Then section 459 may apply the new system of costs to such part of the proceedings as should be had after that section took effect. This makes all consistent and just.

The principle of the code as expressly declared, leads to the same result. It declares in the same section that costs are allowed to the prevailing party by *way of indemnity.* If, as the counsel for the receiver argues and as the decision in the superior court sanctions, the old bill is to prevail as between attorney and client, the indemnity to the client can only be by allowing him what the law compels him to pay to his attorney.

The result is that the code as originally enacted, did not repeal the old fee bill as to suits previously existing ; and that although § 303 of the code as first enacted in terms repealed the old fee bill, yet by prior sections of the code that repeal applied only to future suits. Then before § 459 was enacted the old fee bill was in force as to old suits, and the new fee bill under the code as to new suits ; and services were rendered with a fair understanding that they were to be paid for under

the old system.   Then this new section was added, apply-
ing the code to all *future* proceedings in the old suits.   The
effect of this, on § 303 was that after this the old fee bill was
repealed as to all future proceedings, but was in force as to
all past proceedings.   It can hardly be questioned that those
who adopted this section meant it to apply only to the *mode* of
future proceeding in such suits, and did not mean to disturb any
thing that had even the seeming of a pre-existing right.   Oth-
erwise they would not have been so careful to confine the effect
of the section to future proceedings, and to include, by express
terms, costs in appeal, and leave them out in other cases.   This
shows that they did not intend that past costs should be inclu-
ded in the general term future proceedings, before used.

The whole question, perhaps, turns more properly on the
meaning of the decree than of the code.   That gives taxable
costs, expenses and counsel fees.   The costs intended must be
such as would cover all the expenses of the party, legitimately
incurred in the suit, and those would include for the attorney
whatever might have been fairly taxed to him, as the services
were rendered and the suit progressed.

The taxing officer should proceed and tax the costs on the
principles above stated; taxing all costs prior to 1st July 1851,
under the chancery fee bill, and all subsequent costs under the
code.

[NEW YORK GENERAL TERM, December 27, 1854.   *Mitchell, Roosevelt* and
*Clerke,* Justices.]